Albert A. Renner, Appellee, v. Jacksonville Clothing Company, Appellant.

Gen. No. 8, 382.

176

Opinion filed February 3, 1930.

BELLATTI, SAMUELL & MORIARTY, for appellants.

MASTERS & MASTERS, for appellee; WALTER T. DAY, of counsel.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This is a suit in chancery for an accounting, receiver and injunction. The complainant, appellee Albert A. Renner, was the largest stockholder of a corporation doing business in Jacksonville, Illinois, under the name of Jacksonville Tailoring Company. Such corporation, in the conduct of its business, had a large amount of machinery, tools, equipment, patterns and

leasehold right and in carrying on such business appellee became acquainted with the defendants. One of the defendants, N. J. Federgreen, operated a clothing factory at Fairbury, Illinois, engaged principally in the making of pants and had in his plant machinery, tools and equipment of various kinds. The other defendants resided in Chicago, Illinois.

After much discussion these parties proposed to organize a new corporation, to be known as the Jacksonville Clothing Company. Throughout the proceedings, therefore, the old and new corporations have been distinguished by designating them, respectively, as the Tailoring Company and the Clothing Company, and will be so designated herein.

On June 15, 1924, a contract was entered into among the four parties, interested to organize the new corporation. By such contract the appellee, Albert A. Renner, was to turn over to the new corporation all the "machinery, tools, equipment, good will, patents, leases and other intangibles" of the Tailoring Company, and the defendant N. J. Federgreen was to turn over similar assets of his factory at Fairbury, Illinois. It was agreed and stipulated in such contract that the said properties were valued at $3,250 each. The appellee, Albert A. Renner, and the defendant N. J. Federgreen, in return for the assets thus surrendered to the new corporation, were to receive 32½ shares each fully paid. These two men also were to subscribe and pay for 17½ shares of additional stock in the Clothing Company. The remaining incorporators, Herbert Rindskopf and Fred Philipson, subscribed for 50 shares of the capital stock of the Clothing Company and each paid $5,000 in cash therefor, the plan being that each of the four incorporators should have equal stock holdings of 50 shares.

In order to effectuate his part of the agreement, appellee, Albert A. Renner, surrendered his stock in the old company and received a bill of sale to the ma-

chinery, tools, equipment and assets of such company, and having so become the owner of said assets, turned over to the Clothing Company the articles listed and specified in the contract to be turned over, and thereupon received a stock certificate for 32½ shares of stock of said Clothing Company.

As a part of the contract to incorporate, it was stipulated and agreed that the appellee was to be employed as manufacturing manager of the Jacksonville plant at a salary of $75 a week, and that Mr. Federgreen was to be employed as manager of the Fairbury plant at a similar salary. $50 of such salary was to be paid in cash each week and $25 thereof was to be retained by the corporation and applied upon the 17½ shares of additional stock for which each of said parties had subscribed, each share of which was to be issued to them as paid for in such manner.

In making the transfer of the equipment and machinery of the Tailoring Company at Jacksonville, Illinois, to the Clothing Company, it was found that such property could not be transferred until the provisions of the Bulk Sales Law, Cahill's St. ch. 121a, ¶ 1 et seq., were complied with by the payment of all obligations of the Tailoring Company. For this purpose the new corporation advanced to appellee, upon his promissory note, the sum of $1,500, said note being secured, it is claimed, by an assignment of all accounts due and owing to the Tailoring Company, which accounts were to be collected by the Clothing Company and applied in discharge of such note and any other indebtedness of appellee to the Clothing Company. A short contract of assignment was executed and delivered to the Clothing Company, evidencing such understanding.

All details having been adjusted the new corporation, Jacksonville Clothing Company, commenced business in July of 1924, with appellee in charge of the plant as manager. He continued in such employment

until July, 1927, at which time his services with the company terminated. He was paid each week of such period of three years or more the sum of $50, $25 weekly being retained according to the contract before mentioned. The 17½ shares of stock for which he had subscribed were never issued to him.

The books of the corporation were kept in Chicago. Meetings of the officers and directors were held in Chicago. The business and plant at Jacksonville was eventually leased to Isadore Philipson at a rental of $1 a year.

Other acts of mismanagement were charged in the bill of complaint and appellee charged that his rights as a stockholder were ignored, and that, although he had demanded an accounting of his affairs with the corporation, such accounting had never been made to him, and that the corporation was indebted to him in a large sum of money. The bill concluded with a prayer for a receiver to take charge of the affairs and property of the corporation pending such accounting; for an injunction restraining the transfer of any corporate property; for an accounting under the direction of the court, and upon such accounting the said corporation be directed to pay to appellee the amount found to be due to him upon such accounting, and a prayer for general relief.

The court, upon the application of appellee, appointed Felix Rothchild receiver, and upon giving bond as required by statute, which was given and the receiver went to the plant at Jacksonville, Illinois, to take charge thereof. The receiver was not permitted by those in charge to take possession of such plant, but three days later, with the consent of appellee, an order was entered by the circuit court of Morgan county removing the receiver and permitting the appellant corporation to retain possession of its property upon filing a counterbond, as provided by section 2 of the Chancery Act, Cahill's St. ch. 22, ¶ 56. All questions

as to the receivership from such time passed out of the case and no claims were made by either of the parties on account thereof.

An answer was filed for the appellant Jacksonville Clothing Company, and a joint and several answer for the individual defendants identical therewith. Such answers admit the formation of the corporation Jacksonville Clothing Company, as alleged in the bill of complaint; the contract so providing for such incorporation, the surrender by the appellee of the machinery, tools and equipment of the Tailoring Company to the new corporation; admits that the principle office of the corporation was in Chicago, Illinois; admits the employment of the appellee as manufacturing manager, but denies that his term of employment was for any fixed period of time or at any fixed salary; admits that the appellee acted as manufacturing manager and performed the duties thereof; admits that the meetings of the corporation were held in Chicago and that its policies were controlled by the defendants Federgreen, Philipson and Rindskopf until the latter sold his stock interests and became no longer a member of the corporation; admits that the additional 17½ shares of capital stock have not been issued to the appellee; admits that $25 a week was retained or withheld from the salary of appellee during the time of his employment, but claims that such salary was reduced to $50 per week on January 1, 1927; admits that the appellee assigned to the corporation certain accounts claimed to be due to him, and that such accounts, when collected, were to be applied as a credit as against the sums borrowed by appellee.

The answers deny that appellee made a demand for the issuance to him of the said 17½ shares of stock, or that he demanded an accounting, or that the corporation had failed to account to him for any sum due to him; deny all allegations of the bill as to mismanagement or fraud or conspiracy; deny that an indebtedness

exists in favor of appellee and any right to an accounting, and denies that the appellee is entitled to such additional 17½ shares of stock of the corporation.

The answers further allege that the appellee was indebted to the defendant N. J. Federgreen and that such indebtedness was paid by the corporation to Federgreen, the corporation reimbursing itself therefor out of the salary of appellee withheld weekly according to the contract of incorporation.

Replications were filed to such answers and the cause was referred to the master in chancery to take the proofs and to report the same, together with his conclusions of fact and law thereon.

Upon the accounting complainant made claim to the following items:

| | |
|---|---|
| Trimmings ................ $999.97 | |
| 45 suits at $18, less $400.... 410.00 | |
| Liebman, Philipson & Wolfe check ................... 25.50 | |
| Blumenthal & Frost........ 685.22 | |
| Checks .................... 400.00 | |
| Salary retained ............4,000.00 | |
| Total credits claimed | $6,520.69 |

With the following debits:

| | |
|---|---|
| Extra stock ...............$1,750.00 | |
| Note ..................... 1,500.00 | |
| Order or draft............ 1,016.70 | |
| Debt due to Philipson..... 200.00 | |
| Total Debits | $4,466.70 |

Leaving a balance claimed by appellee of $2,053.99

The master disallowed the claim of $410 for suits; made a deduction from the amount of salary claim of 25 weeks at $25 per week, reducing the item to $3,375; disallowed the claim of Blumenthal & Frost of $685.22; disallowed the item, Liebman, Philipson & Wolfe check, $25.50, and reduced the item of ''Trimmings'' by the amount of $24, making that item $975.97,

resulting in a balance in favor of complainant of $284.27. The master then made tentative findings, as based on the books of the defendant corporation and the items of "Trimmings" and "Salary Correction" as follows:

Salary balance due Renner on
    books ....................$158.30
Personal bal. due Renner on
    books ................... 825.00
Trimmings ................ 975.97
Salary wrongfully deducted.. 225.00

Total due Renner as gross credit $2,184.27
Deduction for 17½ shares of stock.. 1,750.00

Net balance due Renner    $ 434.27

And makes "note" in that connection: In this last "tentative finding" no account is taken of the $200 item which Renner charges himself owing to Fred Philipson. Taking this into account, we find by different routes we arrive close to the same destination or result.

The master in his report makes the following comment: "The affairs of the parties hereto are involved and complicated and intermingled. Renner had money dealings with not only the defendant corporation, but with other defendants. By the conduct of the parties, it would appear that the defendant corporation was a 'clearing house' between Renner and itself and other defendants. For instance: Renner owes Fred Philipson and charges his account with the defendant corporation to cover his debt to Philipson; Renner owes Federgreen $1016.70, and the same is charged to Renner's account with the defendant corporation. What the items involved in Renner's debt to Federgreen, aforesaid, are, is unexplained. In short, there are 'vacuums' in the proof, which may account for any inaccuracies in my findings as set forth in the following paragraph."

The master's report shows the account as stated and recommends that the complainant is entitled to recover the sum of $284.27. There were objections before the master, which were made exceptions before the chancellor, and upon a hearing of the exceptions the court recast the account and entered a decree finding that the complainant was entitled to the following items of account:

For the value and amount of machinery, tools, equipment and good will......$3,250.00

Salary of appellee retained from July 15, 1924, to January 1, 1927, @ $25.. 3,150.00

Cash advanced by appellee.. 400.00

The item of "Trimmings" 975.97

Amount collected by appellants from Blumenthal & Frost ................. 685.22

Total amount due appellee......$8,461.19

From which the court decreed there shall be deducted:

Subscription for 50 shares of stock .................$5,000.00

Loan to appellee by I. Philipson ................. 200.00

Amount of note or draft due N. J. Federgreen........ 1,016.70

Note of appellee for moneys advanced ............. 1,500.00

Total deductions ...... $7,716.70

leaving a balance decreed to be paid to appellee by appellants of........ $ 744.49

No interest was figured on the stock purchase or on the $1,500 note and a decree was entered ordering the appellant the Jacksonville Clothing Company to pay

to appellee the sum of $744.49; to execute and deliver to appellee the certificates for 17½ shares of stock in said corporation of the par value of $100 each, within 30 days, or to pay to appellee the additional sum of $1,750 in money; appellee's bond for a receiver and the receiver's bond were each discharged and the bond of appellant to discharge the receiver was left in full force and effect and the costs were taxed to appellant, the clothing company. The appellant, Jacksonville Clothing Company, has brought the record, by appeal, to this court for review.

There are various assignments of error made, nearly all of which pertain to the credits allowed appellee. The items of debit against appellee were cast the same by the master and by the chancellor and about these items there are no contentions unless it may be on a matter of interest. The real items in dispute are practically three: the items of "trimmings" $975.97, the item called Blumenthal & Frost $685.22, and a variation in claims as to the number of months' salary which was retained.

As to the item of trimmings, consisting of cloth, alpaca, canvasses, thread, gimp and clothing materials, the appellee testified that after the corporation was organized, but before taking charge of the Jacksonville factory, that the old corporation, Jacksonville Tailoring Company has continued to work upon its pending business, making suits and overcoats; that on July 15, when the new corporation, Jacksonville Clothing Company, took over the factory, there was on hand a large quantity of unused materials belonging to the appellee and which had formerly belonged to the Tailoring Company before its assets became the property of the appellee. These materials consisted of alpaca, threads, gimp, canvasses and a great variety of materials suitable for making clothing. The appellee testified that Mr. Rindskopf, the secretary of the new

corporation, upon coming to Jacksonville, invoiced and listed these materials with Mr. Bracewell, the secretary of the old corporation. Each item was counted, measured or estimated, and its value determined between them. This inventory was made in duplicate, one copy being taken by Mr. Rindskopf and the other being kept by the appellee. The amount of this inventory was $999.97. These trimmings were taken over by the Clothing Company and were used by it later in the making of clothing. The amount was to be applied upon the debt of the appellee to the corporation. In this testimony the appellee is corroborated by the testimony of Mr. Bracewell, the secretary of the Tailoring Company, who assisted Mr. Rindskopf, the secretary of the Clothing Company, in taking said inventory and computing the amounts. It is conceded there is an error of $24 in this inventory. We cannot, by any of the figures, make this item fit in as a part of appellee's purchase of stock to the amount of $3,250. It is conceded that appellee's inventory, under the contract, amounted to no more than $2,750 and that he was obliged to purchase from Federgreen machinery to the amount of $750 to make up his quota of $3,250, and this $750 later became a part of the item of note and draft due N. J. Federgreen of $1,016.70. The testimony is that appellee put in all of his machinery and tools and they were listed at three different prices— at cost, a medium price and a low price, and at cost price they listed $4,753.50; at a medium price the list showed a value of $3,057 and at a low price the list shows $2,450. This does not include the trimmings which inventoried nearly $1,000. There is a preponderance of the testimony that appellant had these goods. In view of this court it cannot be construed that these goods passed under the clause in the contract: "all machinery, tools and equipment, good will, patents, leases, leaseholds and other intangibles." The word

"equipment" is connected up with the word "tools" and stock and goods are not mentioned. The fact that appellee had this item of credit and did not apply it early is not convincing, as he then owed appellant for stock $1,750 and upon a note $1,500. We see no reason for sustaining the assignment of error as to this item.

As to the item "Blumenthal & Frost, $685.22," appellee testified that he had made some suits for Blumenthal & Sons just previous to the date when the new corporation took charge of the Jacksonville plant, and these suits were in the place of business when it was taken over by the new corporation. A Mr. Frost from Blumenthal & Sons called to take these suits away. Mr. Federgreen of the new corporation was present and would not permit the agent of Blumenthal & Sons to take the suits unless a check was left for them. The agent claimed to have no power to sign a check, but left with Mr. Federgreen under protest a check for $685.22. This check was later converted into two checks by Blumenthal & Sons for $380 and $305.22 dated, respectively, September 2 and September 12, and were paid on their due date to the Clothing Company to be by it applied as a credit upon appellee's debt. Appellee is corroborated with respect to this item by the testimony of Bracewell, who was present at the time. Appellants first objected that there was no showing that this amount ever reached the hands of the appellant Clothing Company, but upon the production of the books of the appellant company it appeared that the appellee was correct in every detail, the books showing the receipt of $380 and $305.22 upon the identical dates testified to by appellee.

On August 6, 1924, appellee made an assignment of all accounts owing to him to appellant, and all collections on said accounts were to be credited upon appellee's note for $1,500. Appellant contends that this assignment does not show the Blumenthal & Frost account. The assignment does not show any item of

account. Appellant concedes that the goods were actually sent to Jacksonville prior to the incorporation of the Clothing Company, and appellant's books show that appellant received pay for the goods. Appellant would have no claim upon these goods unless it purchased or manufactured them and the proofs show neither. This assignment of error should be overruled. As to the item of appellee's salary withheld by appellant, appellee testified, and it is not disputed, that he worked for the corporation as manager of the Jacksonville plant for three years and four weeks—from July 15, 1924, until August 20, 1927. His salary was $75 per week. $25 of this amount was withheld weekly by the corporation to pay for the unissued stock. Over said period the amount withheld amounted to $4,000, the amount claimed by appellee. On behalf of the appellant corporation it was testified that the appellee consented to a reduction in salary as of January 1, 1927. There was considerable uncertainty in the testimony as to when this reduction became effective. Mr. Isadore Philipson, testifying from the books of the corporation, admitted that appellee was credited with salary at $75 a week until March 1, 1927, but claimed that nine weeks of that amount, or $225, was "charged back as an offset," some time during March, 1927, by the bookkeeper. The master in chancery in his report held that appellee was entitled to the salary item from the date when he began work, July 15, 1924, until March 1, 1927, as shown by the books of the corporation, and did not permit the offset of $225 testified to by the witness. The master therefore allowed appellee, on account of the salary item, $3,375. Upon exceptions before the chancellor the chancellor further reduced this item by the amount of $225 "offset," and found that appellee consented to a reduction of salary to $50 weekly as of January 1, 1927. In view of the condition of the proof we are not disposed to disturb the decree of the chancellor.

Appellant assigns error that no interest was figured upon the $1,500 note or upon the $1,750 item of stock purchase. Neither were the dividends or losses of the company accounted for in any manner. As to the question of interest upon the note and amount of stock purchase, appellant raises that question for the first time in this court. In the master's report there was no recommendation as to the item of interest and no objection on that ground made to the report. The question cannot be raised for the first time in this court.

Appellant assigns error in that the decree requires appellant to issue 17½ shares of the stock of the appellant corporation of the par value of $100 and deliver the same to the appellee within 30 days from the date of the decree, or to pay to appellee an additional sum of $1,750. It is argued that this part of the decree is inequitable and that upon failure to deliver the stock, any money decree in lieu thereof should be for the value of the stock and no value of the stock is shown. The rule contended for by appellant would be a correct rule in a proper case where appellee's stock had been taken from him, but in this case appellee never had had the stock. Appellee contracted for the stock and has advanced $1,750 in payment therefor. Appellee is entitled to his purchase or the refund of the purchase price. If appellant has placed itself in a position where it cannot fulfill its contract, it certainly had no right to speculate in shares of stock contracted to be delivered to appellee. In such a case appellant has first rescinded its contract and appellee is entitled to the return of the purchase price which he has advanced.

It is assigned as error that the decree discharges the bond of appellee for a receiver and the receiver's bond. The record shows that the receiver was removed with the consent of appellee. Appellant, as a part of its motion to remove the receiver, offered to file the counterbond provided for by section 2 of the Chancery

Act, Cahill's St. ch. 22, ¶ 56. The appointment of a receiver was never questioned by appellant in the lower court. The receiver never assumed to act as such. He was removed by consent of all parties within a few days of his appointment and no question or element of receivership has appeared in the cause throughout the entire period of time the cause was pending below. No damages were claimed or suggested by appellant on account of the appointment of a receiver. His appointment was not resisted. His removal was by consent and in compliance with the statute in such case provided. Under the circumstances it was not error to discharge the bonds in question.

Finding no error in the record warranting a reversal, the decree of the circuit court of Morgan county is affirmed.

*Affirmed.*